IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

_____

| | |
|---|---|
| JONATHAN SILVER SKY, ) | Cause No. CV 04-154-BLG-RWA |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | FINDINGS AND RECOMMENDATION |
| ) | OF U.S. MAGISTRATE JUDGE |
| MIKE MAHONEY, ) | |
| ) | |
| Respondents. ) | |

_____

On May 11, 2005, this Court ordered Petitioner Jonathan Silver Sky to show cause and prejudice or a fundamental miscarriage of justice to excuse his failure properly to raise in state court the grounds for relief set forth in his federal petition for writ of habeas corpus. Silver Sky responded on July 12, 2005. An additional response was received on October 31, 2005. Silver Sky is a state prisoner proceeding *pro se*.

**I. Background**

In February 2002, Silver Sky pled guilty to incest in Montana's Sixteenth Judicial District Court, Fallon County. His guilty plea was entered pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970). *See* Pet. at 2, ¶¶ 1-2; *id*. at 3, ¶ 5; Order at ¶ 2, *Silver Sky v. Mahoney*, No. 04-312 (Mont. June 1, 2004). On May 7, 2002, he was sentenced to 300 months, though part of his

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

sentence was suspended.  *See* http://app.mt.gov/conweb (last updated Sept. 9, 2004).[1]  He did not appeal.

"Some time in July 2002," *see* Supp. at 3,[2] Silver Sky filed an Application for Sentence Review in the trial court.  On August 8, 2002, an attorney, Kelli Sather, was appointed to represent him.  Ex. B-1 at 1.[3]  Eventually, she persuaded Silver Sky to waive his right to sentence review, which he did on May 1, 2003.  Ex. F-1 at 1.  On or about May 7, 2003, Sather filed a notice of intent to file a petition for postconviction relief and a motion for the appointment of counsel in the trial court.  Ex. G-1 at 1-2.  That motion was denied on May 22, 2003.  Pet. Ex. H-1 at 1-2.

Although Silver Sky's petition says he appealed an adverse decision by the trial court on his petition for postconviction relief, *see* Pet. at 3, ¶ 12, the supplement clarifies that he did not file a postconviction petition.  *Compare* Pet. at 3, ¶ 8, *with*

---

[1]  Silver Sky did not answer all the questions on the Court's form.

[2]  Silver Sky included with his petition form a separate document titled "Petition for Writ of Habeas Corpus."  The instructions for the petition form stated that "Additional pages are not permitted except with respect to grounds for relief and the facts you rely on to support your grounds for relief."  Pet. at 1, ¶ 3.  Silver Sky added a page for two more grounds of relief.  *See* Pet. at 9.  Consequently, the separate document will be construed as additional facts in support of the grounds for relief set out in the Petition form and will be referred to as a Supplement, or "Supp."

[3]  The exhibits are attached to the Supplement.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

Supp. at 3. The records of the Montana Supreme Court do not show that Silver Sky appealed any decision of the trial court; nor do they show a pending action in Silver Sky's name. Similarly, the records of the Sixteenth Judicial District Court do not show that Silver Sky filed a petition for postconviction relief in that court. Silver Sky's response to the Court's Order of May 11 also makes clear that he did not pursue a direct appeal from his conviction and sentence.

Sometime in 2004, Silver Sky filed a petition for writ of habeas corpus in the Montana Supreme Court. On June 1, 2004, that court denied the petition on the grounds that the writ is not available under state law for the purpose of attacking the validity of a conviction or sentence. *See* Order at ¶ 3, *Silver Sky*, No. 04-312; *see also* Mont. Code Ann. § 46-22-101(2) (2003).

Silver Sky filed his petition in this Court on November 19, 2004.

## II. Silver Sky's Allegations

Silver Sky alleges, first, that the constitutional rights of his children were violated by a "state agent" who harassed them at school. *See* Pet. at 4, ¶ 15A(1). Presumably this claim has to do with how the case against Silver Sky came to the attention of the authorities, though that is not clear from Silver Sky's petition. Silver Sky says that he raised this claim before the Montana Supreme Court but the court failed to consider it. *Id*. ¶ 15A(2)-

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 3

(4).

Second, Silver Sky raises claims of ineffective assistance of counsel regarding three attorneys who were serially appointed to represent him. Pet. at 5, ¶ 15B(1). As to all three attorneys, Silver Sky says that he raised these claims before the Montana Supreme Court but the court failed to consider them. *Id*. ¶ 15B(2)-(4).

Silver Sky contends that his first attorney, Richard Burns, argued with him and failed to appear for hearings. *Id*. at 5, ¶ 15B(1); 7, ¶ 17.

Silver Sky contends that his second attorney, Peter Maltese, colluded with the prosecution by agreeing to ask for a retest of a DNA sample by the same laboratory that the State had already used. *See* Pet. at 5, ¶ 15B(1); *id*. at 7, ¶ 17. He also claims that Maltese abandoned the case at the conclusion of the sentencing hearing despite the fact that Silver Sky "had no knowledge for the law, appeals, postconvictions or sentence review."[4] A month or six weeks after sentencing, Silver Sky wrote to Maltese and asked about sentence review. Maltese responded that he no longer represented Silver Sky and had not done so since sentencing. Supp. at 3. Silver Sky believes that Maltese did not tell him about the

---

[4] Silver Sky also avers that the trial court did not inform him of his time to appeal, to apply for sentence review, or to petition for postconviction relief. *See* Supp. at 3.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 4

possibility of an appeal because he was afraid that Silver Sky would "somehow find out the truth as to what happened with and to the D.N.A. testing." Supp. at 4 (emphasis in original). He specifically claims that "Counsel was deficient in failing to consult with petitioner about appeals." *Id*. at 3.

He contends that his third attorney, Kelli Sather, failed to appear for hearings and failed to talk with him until she was ordered to confer with him. He also complains that she filed a petition for postconviction relief when he wanted to file an appeal. *See* Pet. at 5, ¶ 15B(1); *id*. at 7, ¶ 17; Supp. at 5-11.

Third, Silver Sky alleges that the trial court committed "outrageous misconduct" by accepting the prosecution's insistence that a second DNA test be done at the same laboratory that the State asked to do the first test. He contends that the same court "has been stopping the Petitioner every step of the way" and failed to act after his third attorney failed to appear for sentence review hearings. Pet. at 5-6, ¶ 15C(1). Again, Silver Sky says that he raised these claims before the Montana Supreme Court but the court did not consider them. *Id*. ¶ 15C(2)-(4).

Fourth, Silver Sky claims that the prosecutor was vindictive because he colluded with Silver Sky's second attorney to ensure that a second DNA test was performed at the same laboratory that performed the first test. He concludes that the prosecution breached the plea agreement and obtained his guilty plea under

false premises. Pet. at 6, ¶ 15D(1). Again, Silver Sky says that he raised this claim before the Montana Supreme Court but the court did not consider it. *Id*. ¶ 15D(2)-(4).

Fifth, Silver Sky alleges that the probation officer who compiled his presentence report "was making up some of his own answers as he went along" and, when Silver Sky said his attorney should be present, responded that Silver Sky did not have any rights that required protection by an attorney. He claims that the officer testified that Silver Sky was in "Wisconsin or someplace" before he came to Montana when the officer knew that he had been in Arizona instead of Wisconsin. Pet. at 9.[5] Silver Sky says that "everything is the same as to the other grounds," by which he appears to mean that he raised this issue to the Montana Supreme Court but the court failed to consider it. *Id*.

Finally, Silver Sky alleges that the person who conducted his psychiatric evaluation did not tell him that what he said could be used against him at sentencing. When Silver Sky asked whether his attorney should be present, the evaluator said no. Silver Sky complains that the evaluator's recommendations could prolong his sentence. He also complains that the evaluator had a conflict of interest because he was "authorized to draft clients for himself," including after-care and recovery groups. Silver Sky contends that

---

[5] The Petition form contains 8 pages. Silver Sky added another page.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 6

he was not told that he could get an examination by another evaluator and that an outside examination would have helped him at sentencing. Again, he says, "everything is the same as to the other grounds." Pet. at 9.

### III. Analysis

By Order dated May 11, 2005, the Court advised Silver Sky that his petition appeared to barred by the doctrine of procedural default. *See* Order (doc. 3) at 7-8 (citing *Vang v. State of Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003)). Instead of pursuing postconviction relief in May 2003, Silver Sky filed a petition for writ of habeas corpus in the Montana Supreme Court sometime in 2004. The writ of habeas corpus is not available under state law to challenge a conviction or sentence. Order at ¶ 3, *Silver Sky*, No. 04-312; *see also* Mont. Code Ann. § 46-22-101(2) (2003). Following an explanation of the two ways to excuse a procedural default, Silver Sky was given an opportunity either to show cause for his default and prejudice from the asserted constitutional violation(s) or that a fundamental miscarriage of justice would result if the Court failed to consider the merits of his petition. *See generally* Order of May 11 at 8-11.

As the Order of May 11 explained, the procedural default for which Silver Sky was required to show an excuse was his failure to file a petition for postconviction relief in the state courts. Silver Sky's response to the Court's Order insists that he did not

want to pursue postconviction relief; he wanted to pursue a direct appeal. *See* Resp. (doc. 6) at 4.

However, Silver Sky's time to file a direct appeal expired on or about July 9, 2002. *See* Mont. R. App. P. 5(b). It is possible to file a motion for out-of-time appeal in the Montana Supreme Court, *see State v. Tweed*, 59 P.3d 1105, 1109 ¶¶ 14-15 (Mont. 2002), but a movant must establish that he failed to file a timely notice of appeal "through no fault of his own," *id*. ¶ 14. Here, trial counsel informed Silver Sky that he no longer represented Silver Sky two weeks before his time to appeal expired. *See* Supp. at 3. Sometime in July 2002, Silver Sky, acting *pro se*, filed for sentence review. Thus, Silver Sky was neither unable to act on his own behalf nor unaware that counsel was not acting for him. Counsel appointed for the purposes of sentence review, Kelli Sather, could not have succeeded with a motion to file an out of time appeal.

Moreover, all but one of the grounds raised by Silver Sky in his federal petition are appropriately pursued through postconviction proceedings, just as Sather advised Silver Sky. All but one of the claims are based on facts that would not have been part of the record at the time of direct appeal and so could not have been raised before the Montana Supreme Court in that context. The sole (and partial) exception is Silver Sky's claim of "outrageous misconduct" by the trial court on the grounds that the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 8

court accepted the prosecution's insistence that the same laboratory should redo the DNA test, rather than agreeing to allow defense counsel to send the DNA to a different lab for testing. *See* Pet. at 5-6, ¶ 15C(1). That was neither misconduct by the trial court nor outrageous. Silver Sky has not pointed to any reason in the record to believe that the first laboratory test was wrong, much less any reason to believe that it was deliberately falsified. If the first test was wrong, a subsequent test by the same laboratory would have been different. Presumably, however, both tests arrived at the same result. To whatever extent Silver Sky might have been able to produce evidence to suggest that the lab's tests were falsified, he could only have done so in postconviction proceedings. Yet he failed to file a petition for postconviction relief.

Silver Sky has failed to identify any objective factor external to the defense that impeded his efforts to comply with his appointed counsel's advice to pursue a postconviction petition. He simply failed to listen to his lawyer. He cannot show cause sufficient to excuse the procedural default that he created by failing to pursue postconviction relief. There is no need to consider whether he was prejudiced.

Similarly, Silver Sky has failed to show that this Court's failure to consider his claims would amount to a miscarriage of justice. There is no evidence that he is actually innocent of the

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 9

crime to which he pled guilty.

Because Silver Sky cannot excuse his procedural default, his petition must be dismissed with prejudice.

## IV. Certificate of Appealability

### A. Governing Standards

Pursuant to 28 U.S.C. § 2253(c), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), "[a] certificate of appealability ["COA"] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *See Hohn v. United States*, 524 U.S. 236 (1998); *Lambright v. Stewart*, 220 F.3d 1022, 1024 (9th Cir. 2000). The standard of a "substantial showing" can be satisfied on an issue-by-issue basis. *Lambright*, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

Where, as recommended here, the district court dismisses a claim on procedural grounds, the court must decide whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. at 1026 (quoting *Slack*, 529 U.S. at 484).

Finally, the COA must indicate which issues satisfy the required showing, 28 U.S.C. § 2253(c)(3), and the Court must "state

why a certificate should *not* issue." Fed. R. App. P. 22(b)(1) (emphasis added). The Court need not explain why a certificate *should* issue. *Id*.

### B. Application

Here, Silver Sky had an opportunity to show that the Court should overlook his failure to pursue postconviction relief in the state courts. Silver Sky had appointed counsel who advised him to do just that, and he chose not to follow her advice. Moreover, he pled guilty to the offense of which he was convicted, and he has not introduced any evidence or even speculation of any substance that could indicate that no reasonable juror would have convicted him. His procedural default is unexcused. The Court does not believe that reasonable jurists could disagree with this determination.

### RECOMMENDATION

Based on the foregoing, the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), **RECOMMENDS** that the Petition (doc. 1) be DISMISSED WITH PREJUDICE on the grounds that Silver Sky's procedural default is unexcused. A certificate of appealability should be DENIED.

Silver Sky is advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed or delivered to prison authorities for mailing within twenty (20) calendar days after the date on the certificate of mailing below, or objection is waived.

The Clerk of Court shall forthwith forward a copy of these Recommendations to Silver Sky at his last known address.  <u>Silver Sky must keep the Court informed of his current mailing address while his case remains pending</u>.

DATED this ___9th___ day of December, 2005.

/s/ Richard W. Anderson
Richard W. Anderson
United States Magistrate Judge